UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JAMES MARKS, ET AL** | * | **CIVIL NO. 6:15-1735** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **WESTWIND HELICOPTERS, INC.** | * | **MAGISTRATE JUDGE WHITEHURST** |

<u>REPORT AND RECOMMENDATION</u>

Pending before me for report and recommendation is Rolls-Royce Corporation's ("Rolls-Royce") Fed. R. Civ. P. 12(b)(2) and 12(b)(6) Motion to Dismiss Westwind Helicopters, Inc.'s ("Westwind") First Amended Cross-Claims, filed on September 30, 2015 [rec. doc. 54]. Westwind filed opposition on October 28, 2015 [rec. doc. 63]. Rolls-Royce filed a reply on November 6, 2015 [rec. doc. 75]. Oral argument was held on December 7, 2015, after which the motion was taken under advisement. [rec. doc. 76].

For the following reasons, the motions are **DENIED**.

**I. BACKGROUND**

On or about May 30, 2014, plaintiff, James Marks ("Marks"), was employed by CB&I Offshore Services, Inc. ("CB&I"), as a foreman, and was assigned to oversee maintenance work being performed on a production platform located at Eugene Island 182A in the Gulf of Mexico south of Morgan City, Louisiana. [rec. doc. 46, Marks' First Amended Complaint for Damages ("Marks Amended Complaint"), ¶ 5]. Plaintiffs, Shannon James ("James"), Canard Powell ("Powell"), and Joey Ganson ("Ganson"), were employed by L&L Sandblasting/CB&I Offshore Services, Inc. ("L&L") to do blasting and painting work on the platform. [James, Powell and Ganson's First Amended Complaint for Damages ("JPG Amended Complaint"), rec. doc. 47, ¶ 5]. That day, the four workers boarded a Bell 407 helicopter bearing FAA registration number

N1197 for transport from the Eugene Island 182A platform to shore. [Marks Amended Complaint, ¶ 6; JPG Amended Complaint, ¶ 6].

Shortly after takeoff, the helicopter experienced a sudden loss of power, causing the pilot to deploy the emergency flotation system and crash into the Gulf of Mexico. [Marks Amended Complaint, ¶ 12]. Plaintiffs allege that as a result of the crash, they suffered severe injuries. [Marks Amended Complaint, ¶ 26].

GM Leasing Company, LLC ("GML"), a Louisiana limited liability company with its operations headquarters located in the Parish of Lafayette, was the owner of the helicopter. [Marks Amended Complaint, ¶¶ 2, 7; JPL Amended Complaint, ¶ 7]. GML purchased the helicopter from Bristow US., LLC ("Bristow") in February, 2011. [rec. doc. 63, Exhibit G, Declaration of David Guidry ("Guidry Decl."), ¶ 2]. The sales agreement provided that the aircraft was to be delivered from Bristow's possession in New Iberia, Louisiana, to GML's possession in Broussard, Louisiana. [Guidry Decl., ¶ 3; Ex. G-1].

Westwind Helicopters, Inc. ("Westwind"), a foreign corporation organized under the laws of the State of Texas with its principal place of business located in Galveston, Texas, was the operator of the helicopter. [Westwind's First Amended Answer to Plaintiff's Complaint for Damages and Cross-Claims Against Defendant Rolls-Royce Corporation ("Westwind Cross-Claim"), ¶ 2; Marks Amended Complaint, ¶¶ 2, 8]. A Westwind employee piloted the helicopter. [Marks Amended Complaint, ¶ 8]. Westwind performed all maintenance and safety inspections on the aircraft. [Marks Amended Complaint, ¶ 9].

Rolls-Royce, a Delaware Corporation with its principal place of business in Indianapolis, Indiana, was the manufacturer of the M250 series engine and turbine which were installed in the

helicopter. [Marks Amended Complaint, ¶¶ 2, 11; rec. doc. 52, Declaration of Scott S. Scheurich ("Scheurich Decl."), ¶ 24]. General Motors' Allison Gas Turbine Division manufactured and sold the outer combustion case on the engine and turbine as a spare part to Dallas Airmotive, headquartered in Dallas, Texas, on July 7, 1989.[1] [Scheurich Decl., ¶ 9].

On October 31, 2000, Rolls-Royce sold and shipped the engine to Rolls-Royce Engine Services, Oakland, California ("RR Oakland"), a separate corporation from Rolls-Royce. [Scheurich Decl., ¶ 12]. From there, the engine was provided to AcroHelipro Global Services ("AHGS") in August 2006. [rec. doc. 63, Exhibit W, Declaration of Ron Webster ("Webster Decl."), ¶ 2]. In October 2006, the engine was transferred from AHGS to the U.S. Department of Homeland Security ("Homeland Security"). [*Id*.].

In September, 2011, Homeland Security sold the engine to Arrow Aviation, which repairs and maintains helicopters for GML. [Webster Decl., ¶¶ 1, 3]. Arrow Aviation then installed the engine into the Bell 407 helicopter, which was sold to GML.[2] [Webster Decl., ¶ 4].

Rolls-Royce sold and shipped the turbine module at issue (CAT 45069) to Bell Helicopter Canada on September 30, 2005. [Scheurich Decl., ¶ 10]. On June 14, 2013, another turbine module (CAT 95319) was installed on the subject engine. [Scheurich Decl., ¶ 13]. On or about August 30, 2013, the installed turbine module (CAT 95319) was removed from the subject

---

[1] In the original complaint, Marks alleged a defect in the outer combustion case. [rec. doc. 1, ¶¶ 12, 13]. Plaintiff amended the complaint to allege that an unspecified defect in the engine caused the outer combustion case to crack. [rec. doc. 46, ¶¶ 13, 14].

[2] Webster indicates that Arrow Aviation "sold the helicopter with the subject engine to GM Leasing." [Webster Decl., ¶ 4]. This contradicts Guidry's statement that the helicopter was purchased by GML from Bristow. Guildry Decl., ¶ 2].

engine. [Scheurich Decl., ¶ 14]. On August 30, 2013, the turbine module at issue (CAT 45069) was installed onto the subject engine. [*Id*.].

Aviall, Inc. ("Aviall"), is the dealer/distributor of Rolls-Royce engines and parts for Louisiana, and has a location in Broussard, Louisiana, located on Rolls Royce Dr. [rec. doc. 63, Exhibit M, Declaration of Myron Hillers ("Hillers Decl."), ¶ 4]. According to Rolls-Royce's website, Aviall is the parts distributor for the "gold fleet" of Rolls-Royce M250 engines pursuant to a distribution arrangement with Aviall. [Hillers Decl., ¶ 5; Exhibit M-1]. Rolls-Royce has a Louisiana-specific representative, Carl Landriault ("Landriault"), who is located in Baton Rouge, Louisiana and is Rolls-Royce's contact for Louisiana Rolls-Royce engine customers. [Hillers Decl., ¶ 6; Exhibit M-3].

Rolls-Royce's website advertises that Rolls-Royce Indianapolis "has become a leading industry supplier in the US with a significant and growing presence." [rec. doc. 63, Declaration of Alex Whitman ("Whitman Decl."), ¶ 2, Exhibit A-1]. The website states that Rolls-Royce North America, Inc. is "the company's regional corporate headquarters," and that it provides "management direction and corporate support for all Rolls-Royce business and operations in the region, encompassing more than 7,000 employees at 66 locations across the US and Canada." [Whitman Decl., ¶ 3; Exhibit A-2]. Among the company's global businesses listed on the website are Rolls-Royce Helicopters in Indianapolis, Indiana, and Rolls-Royce Engine Services - Oakland. [Whitman Decl., ¶ 3; Exhibit A-2].

The Rolls-Royce website advertises its M250 engine as powering the Bell 407 helicopter. [Whitman Decl., ¶ 6, Exhibit A-4]. Bell Helicopter's website advertises the "Oil & Gas" specific Bell 407 helicopter as having a Rolls-Royce engine. [Whitman Decl., ¶ 9, Exhibits A-7, A-8 and

4

A-9].

The U.S. Bureau of Ocean Energy Management's website section on Oil and Gas Energy Programs publishes a September 1, 2015 map of Oil & Gas Leasing Programs for Gulf of Mexico providing leasing information of oil and gas rigs throughout the Gulf. [Whitman Decl., ¶ 7, Exhibit A-5]. The map shows that the "Central Planning Area" below Louisiana and, to a lesser extent, Mississippi and Alabama, well eclipses the other Gulf areas below Texas and Florida. [*Id.*]. The "Central Planning Area" also has vastly more oil and gas rigs than any other area, including the Pacific and Alaska. [Whitman Decl., ¶ 8].

On May 20, 2015, Marks filed an admiralty and maritime claim under 28 U.S.C. § 1333 in this Court, alleging claims against GML and Westwind for negligence, and against Rolls-Royce under the Louisiana Products Liability Act ("LPLA") and for negligence. Specifically, Marks alleges that the engine and/or a component part of the engine sold by Rolls-Royce and incorporated into the helicopter had a defect and malfunctioned, ultimately causing the crash.

Westwind filed an Answer to Plaintiff's Complaint for Damages and Cross-claims against Rolls-Royce on May 29, 2015. [rec. doc. 3]. CB&I filed a Complaint of Intervention on July 29, 2015. [rec. doc. 33].

On June 16, 2015, this suit was consolidated with related actions filed in this Court by James, Powell, and Ganson. [rec. doc. 11]. On July 14, 2015, Rolls-Royce filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(6) or, Alternatively, for a More Definite Statement under Fed. R. Civ. P. 12(e), against James, Powell and Ganson. [rec. doc. 13]. On July 20, 2015, Rolls-Royce filed a motion to dismiss against Marks. [rec. doc. 16]. Rolls-Royce also filed a motion to dismiss Westwind's Cross-Claim on July 20, 2015. [rec. doc. 17]. On

August 8, 2015, Rolls-Royce filed a motion to dismiss CB&I and American Longshore Mutual Association, Ltd.'s ("ALMA") Complaint of Intervention.  [rec. doc. 34].

On August 10, 2015, Magistrate Judge C. Michael Hill held a telephone hearing on the motions to dismiss, in which he allowed plaintiffs and Westwind 30 days to file amended complaints and a cross-complaint, and dismissed the motions as moot.  [rec. doc. 38].  On August 17, 2015, Judge Hill issued an Order dismissing as moot Rolls-Royce's motion against CB&I and ALMA.  [rec. doc. 45].

On September 9, 2015, Marks filed a First Amended Complaint for Damages.  [rec. doc. 46].  James, Powell and Ganson also filed a First Amended Complaint for Damages on September 9, 2015.  [rec. doc. 47].  Westwind filed a First Amended Answer to Plaintiff's Complaint for Damages and Cross-Claims against Rolls-Royce on September 9, 2015. [rec. doc. 48].

On September 30, 2015, Rolls-Royce filed the instant motions to dismiss.  [rec. doc. 54].

## II. ANALYSIS

### A.  Motion to Dismiss under Rule 12(b)(2)

The arguments raised in Rolls-Royce's Motion to Dismiss under Rule 12(b)(2) filed against Westwind are identical to those asserted in Rolls-Royce's Fed. R. Civ. P. 12(b)(2) Motion to Dismiss Marks' First Amended Complaint for Damages, filed on September 30, 2015 [rec. doc. 52].  Accordingly, for the reasons set forth in the Report and Recommendation issued on Rolls-Royce's Fed. R. Civ. P. 12(b)(2) Motion to Dismiss Mark's First Amended Complaint for Damages issued on January 20, 2016 [rec. doc. 78], it is recommended that the Motion to Dismiss under Rule 12(b)(2) [rec. doc. 54] be **DENIED**.

### B. Motion to Dismiss under Rule 12(b)(6)

In the Cross-Claim, Westwind asserted claims for redhibition, strict products liability under the LPLA, and negligence. By its motion to dismiss, Rolls-Royce argues that Westwind's amended cross-claims fails to adequately plead any claims against it.

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (*quoting Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* at 205 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. (*quoting Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. 1964-65 (citations, quotation marks, and brackets omitted). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*.

### *1) Claim of Starr Adjustment Services, Inc.*

In the Amended Cross-Claim, Westwind alleged that it leased the Bell 407 helicopter at issue from the owner, GML, who was insured by Starr Adjustment services, Inc. ("Starr"), and that Starr was the real party in interest as to the claims asserted therein, "through rights gained by way of subrogation, equity, and/or assignment." [rec. doc. 48, ¶ 8]. In its motion to dismiss, Rolls-Royce asserts that Westwind's amended cross-claims "cast further doubt on its ability to state a cause of action because it now says the claim belongs to Starr." [rec. doc. 54, p. 18]. While Rolls-Royce neither cites any authority nor makes any specific argument as to this proposition, the undersigned notes that Louisiana courts have held that a party may be subrogated to claims for redhibition and negligence. *Kelly v. Porter, Inc.*, 687 F.Supp.2d 632, 643 (E.D. La. 2010) (citing *Alvis v. CIT Group/Equip. Fin., Inc.*, 2005-0563 (La. App. 3 Cir. 12/30/05; 918 So.2d 1177, 1184); *Westinghouse Credit Corp. v. M/V New Orleans*, 39 F.3d 553, 554 (5th Cir. 1994). Thus, this argument lacks merit.

### *2) Claim under the LPLA*[3]

Rolls-Royce's argument regarding the applicable products liability law in its motion to dismiss Westwind's LPLA claim is identical to that asserted against Marks. For purposes of this motion, the undersigned will assume that the LPLA applies. *See Landry v. Apache Corp.*, 2008 WL 115190 (W.D. La. Jan. 10, 2008) (parties agreed that the LPLA applied to action for damages suffered by plaintiff when a helicopter powered by a gas turbine engine manufactured by Rolls-Royce crashed into the Gulf of Mexico).

---

[3] Louisiana courts have held that "the LPLA subsumes all possible causes of action [against a manufacturer] with the exception of redhibition." *Nelson v. Mylan Pharmaceuticals, Inc.*, 2010 WL 3339274, *3 (W.D. La. Aug. 3, 2010).

The LPLA establishes the exclusive theory of liability for manufacturers regarding damages caused by their products and is set forth in LA. REV. STAT. § 9:2800.51, *et seq*. *Richard v. Anadarko Petroleum Corp*., 2014 WL 1029898, at *4 (W.D. La. Mar. 17, 2014) (Drell, J.). The applicable standard under the LPLA is as follows:

> The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.

LA. REV. STAT. § 9:2800.54(A).

Liability may attach, if and only if (among other requirements) the product is unreasonably dangerous: 1) in construction or composition, 2) design, 3) because of an inadequate warning, or 4) because it fails to conform to an express warranty. LA. REV. STAT. § 9:2800.54 (B); *Louisiana Farm Bureau Mut. Ins. Co. v. Leviton Mfg. Co., Inc*., 2015 WL 1221356, at *4 (W.D. La. Mar. 17, 2015) (James, J.). Ultimately, a cause of action under the LPLA requires proof:

> (1) that the defendant is a manufacturer of the product;
>
> (2) that the claimant's damage was proximately caused by a characteristic of the product;
>
> (3) that this characteristic made the product "unreasonably dangerous;" and
>
> (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Richard*, at *4 (*citing Ayo v. Triplex, Inc*., 457 F. App'x 382, 385-86 (5th Cir. 2012)).

In this case, Westwind alleges that the Rolls-Royce engine was defective in two of the four categories of defects recognized by the LPLA: design and warning.

### *a) Design*

Under the LPLA, a product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

LA. REV. STAT. § 9:2800.56.

Thus, to state a claim for defective design under the LPLA, plaintiff must allege, at minimum, an alternative design that was capable of preventing the damage. *Louisiana Farm Bureau*, 2015 WL 1221356, at *6-7 (*citing Flagg v. Elliot*, 2014 WL 4450451, at *4 (E.D. La. Sept.10, 2014), *judgment vacated by Flagg v. Stryker Corp.*, 801 F.3d 456 (2015); *Becnel v. Mercedes-Benz USA, LLC.*, 2014 WL 1918468, at *8 (E.D. La. May 13, 2014)).

In the amended cross-claim, Westwind's allegations for its design defect claim are as follows:

38.

RRC [Rolls-Royce] manufactured the engine installed on the helicopter at the time of the May 30, 2014 incident.

39.

On May 30, 2014, the helicopter was forced to make an emergency landing in the Gulf of Mexico due to a loss of engine power, which resulted from the aforementioned defects in the engine, after which the helicopter inverted and was

10

substantially damaged, rendering it a total loss.

40.

During the engine's operation cracks arose in the Outer Combustion Case as a result of a defect in design in manufacture, rendering it unreasonably dangerous because it deviated in a material way from the manufacturer's specifications or performance standards, industry standards, or from otherwise identical products manufactured by the same manufacturer.

41.

The engine was unreasonably dangerous in design because, when it left RRC's control, an alternative design existed that could have prevented Westwind's damages. The likelihood that the product's design would cause Westwind's damages and the gravity of those damages outweighed the burden on RRC of adopting such an alternative design and the adverse affect of such alternative design on the utility of the product.

Here, Westwind has alleged a plausible claim for defective design. At this stage, "judicial experience" and "common sense" counsel against dismissal of these claims. *Louisiana Farm Bureau*, 2015 WL 1221356, at *6-7 (*citing Iqbal, supra*). Accordingly, the undersigned concludes that Westwind's cross-claim, as amended, states plausible defective design claim under the LPLA, sufficient to afford defendant fair notice of the claim(s) against it, along with the reasonable expectation that discovery will reveal relevant evidence for each of the elements of the claim. *Id*. (*citing Twombly*, *supra*).

### b) Failure to Warn

To maintain a failure to warn claim under the LPLA, "a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." *Johnson v. Transwood, Inc*., 2015 WL 5680369, at *7 (M.D. La. Sept. 25, 2015) (*citing Stahl v. Novartis*

*Pharmaceuticals Corp.*, 283 F.3d 254, 264 (5th Cir. 2002)). To satisfy the first prong of this test, the plaintiff must allege facts as to the "cause, frequency, or consequences" of the dangerous characteristic at issue. *Watts v. RCA Corp.*, 2015 WL 158898, at *5-6 (W.D. La. Jan. 12, 2015) (James, J.).

Westwind's allegations for inadequate warning are as follows:

42.

The engine was unreasonably dangerous because of an inadequate warning because RRC failed to use reasonable care to provide an adequate warning of this characteristic. RRC breached its duty by failing to provide an adequate warning to Westwind.

43.

Westwind's use of the engine was reasonably anticipated.

44.

Westwind's damages were directly and proximately caused by these unreasonably dangerous characteristics.

Under the LPLA, proximate cause is analyzed using the same duty/risk considerations employed in an ordinary negligence action, *i.e.*, whether the "risk, and harm caused, [was] within the scope of protection afforded by the duty breached." *Watts*, 2015 WL 158898, at *5 (*citing Traina v. NationsBank of Texas, N.A.*, 2001 WL 1041773 (E.D. La. Sept. 7, 2001) (citations omitted); *Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94); 646 So.2d 318, 321-322). Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. *Roberts v. Benoit*, 605 So.2d 1032, 1044 (La. 1991).

Here, Westwind alleges that the accident was caused by Rolls-Royce's failure to warn that when the engine left Rolls-Royce's control, it possessed a dangerous characteristic that could cause damage. The undersigned concludes that the scope of the duty owed by Rolls-Royce is broad enough to encompass the risk of the harm suffered. In sum, at this early stage of the proceedings, Westwind's cross-claim, as amended, states a plausible inadequate warning claim under the LPLA. *Watts*, 2015 WL 158898, at *6.

### *3) Redhibition*

Westwind's allegations in the Amended Cross-Claim for redhibition are as follows:

27.

RRC manufactured the engine installed on the helicopter at the time of the May 30, 2014 incident, and sold the engine in question to GMLC [GML] in Louisiana. The rights to assert any claim for redhibition arising out of a Louisiana sale are properly asserted by Westwind in subrogation for the reasons provided above.

28.

RRC warranted to Westwind and GMLC that the engine was free from redhibitory defects. *See* La. C.C. Art. 2520.

29.

The engine, however, contained defects in its manufacture or design, specifically including warnings defects, that rendered it useless, or its use so inconvenient that it must be presumed that Westwind and GMLC would not have bought the engine or any product including the engine had it known of the defects.

30.

Upon information and belief, the defects in the engine's design and/or manufacture that included a defect that causes cracks in the Outer Combustion case, which resulted from a defective design or manufacture of the engine that causes the premature cracking and failure of the Outer Combustion Case.

31.

The defects in the engine's manufacture or design existed at the time the engine left the care, custody, and control of RRC.

32.

As the manufacturer and/or seller of the engine, RRC is deemed to know that the engine contained redhibitory defects. *See* La. C.C. Art. 2545.

33.

RRC knew of the redhibitory defects, but failed to warn Westwind and GMLC of them.

34.

The redhibitory defects in the engine caused the helicopter to crash into the water in the Gulf of Mexico, resulting in substantial damage to and the complete loss of the helicopter.

35.

RRC is liable to Westwind, including for damages to GMLC and/or Starr Adjustment Services, Inc., either through subrogation, equity, assignment, or other means, for all damages caused by the defects in the engine, including but not limited to, the return of the purchase price or value of the helicopter, with interest, damages, and reasonable attorneys' fees. La. C.C. Art. 2545. This includes liability for breach of warranty of any other potentially applicable law, either express or implied.

To maintain an action of redhibition, the plaintiff must prove that the vendor sold a thing to him, that the thing contained a hidden vice, not apparent by ordinary inspection, which subsequently rendered the thing unfit for use, that the vice existed at the time of sale, and that the vendor did not advise him of it. *Guillory v. Morein Motor Co., Inc.*, 322 So.2d 375, 379 (La. App. 3rd Cir. 1975); *Peters v. Pattison Pontiac Co.*, 259 So.2d 99, 101 (La. App. 4th Cir. 1972). Here, Westwind alleged that RRC manufactured and sold the engine to GML, and that Westwind had the right in subrogation to assert a claim in

redhibition arising out of the sale; the engine contained defects, which rendered it useless, or so inconvenient that Westwind and GML would not have bought the engine or any other product had it known of the defects; the defects existed at the time it left Rolls-Royce's control, and Rolls-Royce knew of the defects but failed to warn Westwind and GML of them. Accordingly, Westwind has sufficiently pled a claim for redhibition under Louisiana law.

### III. CONCLUSION

Based on the foregoing, it is the recommendation of the undersigned that Rolls-Royce's Fed. R. Civ. P. 12(b)(2) and 12(b)(6) Motion to Dismiss Westwind's First Amended Cross-Claims [rec. doc. 54] be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL**

**FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed this 20th day of January, 2016, at Lafayette, Louisiana.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE